454

Ellis Liquor License Case.

Argued April 12, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*John E. Caputo*, Special Assistant Attorney General, with him *Thomas J. Shannon*, Assistant Attorney General, and *Walter E. Alessandroni*, Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Byrd R. Brown*, with him *Utterback, Brown & Harper*, for appellee.

OPINION BY WRIGHT, J., June 17, 1965:

On March 2, 1962, Frank Ellis, owner of premises known as Ellis Hotel and Grill, located at 2044 Centre Avenue in the City of Pittsburgh, and operated under a hotel liquor license, filed with the Pennsylvania Liquor Control Board an application for renewal of a Sun-

day Sales permit. On April 17, 1962, this application was refused by the Board for the following reason: "Sales of food and nonalcoholic beverages in your establishment are not equal to 55 per centum or more of the combined gross sales of both food and alcoholic beverages, as required by the Pennsylvania Liquor Code and the Regulations of the Board". Following a premature appeal and a subsequent hearing before the Board, an order was entered by the Board on November 15, 1962, again refusing the application for the reason stated. Ellis then appealed to the County Court of Allegheny County, and the matter was submitted on the record before the Board. On August 27, 1964, the appeal of Ellis was sustained. The Board thereafter appealed to this court.

There is no real dispute as to the facts. The establishment in question has two areas in which liquor is served. One is the tap room, and the other is the dining room. Although some discrepancy is apparent in the figures which follow, they are thus stated in both briefs and in the opinion below. Gross sales of food and alcoholic beverages in the entire establishment for the year 1961 amounted to $59,837.54. Of this total amount the sum of $10,200.61, or 17.05 percent, represented sales of food. In the taproom, sales of alcoholic beverages amounted to $42,310.36, and sales of food amounted to $1,755.92. In the dining room, sales of alcoholic beverages amounted to $145.50, and sales of food amounted to $2,876.67. It is the contention of the licensee, sustained by the lower court, that his application for a Sunday sales permit may be based on the figures for his dining room only.

The Liquor Code, as enacted April 12, 1951, P. L. 90, 47 P.S. 4-401 et seq., contains two sections which are here pertinent. Section 403 provides, inter alia, that every application for a hotel, restaurant or club liquor license "shall contain a description of that part

of the hotel, restaurant or club for which the applicant desires a license". Section 406 provides, inter alia, that every hotel, restaurant or club liquor licensee may sell alcoholic beverages "for consumption only in that part of the hotel or restaurant habitually used for the serving of food to guests or patrons, and in the case of hotels, to guests, and in the case of clubs, to members, in their private rooms in the hotel or club".

The instant appeal involves a dispute as to the interpretation of the amendment to Section 406, enacted January 7, 1960, P. L. 2106, permitting Sundays sales in certain hotels located in cities of the first and second class. This amendment made no change in the 1951 language of Section 406 above quoted, and which now appears as subsection (a). The amendment added several other subsections which, as here pertinent, are as follows:

"(e)   It is the intent of this act to provide a method whereby the will of the electors of each city, with respect to the authorization of the sale of liquor and malt or brewed beverages during certain hours on Sunday in hotels, may be ascertained, and it shall be the duty of the Pennsylvania Liquor Control Board to grant such authorization in accordance with the will of the electors as ascertained at said election. In case of failure of the board to do so, the duty herein imposed upon the board may be enforced by mandamus.

"(f)   The provisions of this section shall be applicable only to those hotels whose sales of food and nonalcoholic beverages are equal to fifty-five per centum or more of the combined gross sales of both food and alcoholic beverages.

"(g)   The provisions of this section shall be applicable only to those rooms in hotels customarily used for the serving of food.

"(h)   The board is specifically given power, without limiting the power conferred by other sections, to

make such rules and regulations as it deems necessary to insure compliance with and the enforcement of the provisions of this section".

It is obvious that the legislature intended to exclude establishments in which the principal business was dispensing liquor rather than serving food. This intent is evidenced by the plain language of subsection (f), which is a declaration of legislative policy to be carried out by the Board in granting licenses to such hotels as qualify therefor under Section 406. See *Garrett v. McHenry*, 403 Pa. 451, 170 A. 2d 363. As previously indicated, sales of food in the establishment here under consideration amounted to only 17.05 per centum of the combined gross sales of both food and alcoholic beverages. It follows that the Board acted properly in refusing to renew the licensee's Sunday sales permit.

The licensee argues that he has only one room which is customarily used for the serving of food, namely, the dining room. This argument completely overlooks the provision in subsection (a). The word "habitually" as used in subsection (a) is synonymous with the word "customarily" as used in subsection (g). The licensee concedes that his taproom "is in fact a place where food is habitually sold", and testified that he opened the taproom on Sundays "when I have gotten crowded in the dining room". The taproom must necessarily be considered as part of the hotel habitually used for the serving of food, otherwise the licensee would not be permitted to serve alcoholic beverages therein. We are therefore unable to agree with the licensee's position that "only his dining room area should be considered in computing the 55% food sale requirement".

A second contention has been advanced which is here noted only to indicate that it has not been overlooked. We perceive no merit in the argument that the Sunday sales permit should be renewed because the

licensee was allegedly unable to secure an interpretation of the amendment from the Board.

In conclusion, the provisions of the Code must be interpreted in the interest of the public welfare and not in aid of persons seeking private gain: *Gismondi Liquor License Case*, 199 Pa. Superior Ct. 619, 186 A. 2d 448. The construction placed on subsections (f) and (g) by the licensee would nullify and make meaningless the whole theory and purpose of the Sunday Sales Amendment.

The order of the court below is reversed, and the order of the Board is reinstated.